UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
AMIT PATEL,

                    Petitioner,

       *-against-*

BRANDON J. SMITH,
                Respondent.
----------------------------------X

**MEMORANDUM & ORDER**

21-CV-992
21-CV-993

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

        Petitioner Amit Patel is incarcerated pursuant to two judgments of conviction imposed in New York State Supreme Court, Queens County.  Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that his state custody from each conviction violates his federal statutory and constitutional rights.  (21-CV-992, ECF No. 1 ("First Pet."); 21-CV-993, ECF No. 1 ("Second Pet.").)  For the reasons set forth below, the petitions are respectfully DENIED.

**BACKGROUND**

**I.   Petitioner's First Conviction**

        On December 13, 2013, Petitioner was convicted by a jury for operating a vehicle while under the influence of alcohol in violation of New York Vehicle and Traffic Law ("V.T.L.") § 1192(3) and was acquitted of aggravated driving while intoxicated under V.T.L. § 1192(2).  (21-CV-992, ECF No. 11-2 ("2012 Indictment

1

Transcripts") at 456.).[1]  On October 14, 2014, Petitioner was sentenced to an indeterminate sentence of two to six years in prison.  (*Id.* at 476.)

## II.  Direct Appeal

Petitioner appealed his conviction to the Appellate Division, Second Department. Petitioner argued his conviction was against the weight of the evidence and that he was denied a fair trial because the arresting officer was allowed to testify about a portable breathalyzer test (PBT) taken on a personal device. (21-CV-992, ECF No. 11-1 ("State Court Records") at 1-25.)  On February 20, 2019, the Appellate Division affirmed the conviction. *People v. Patel*, 169 A.D.3d 934 (2d Dep't 2019).  On May 1, 2019, the Court of Appeals denied leave to appeal.  *People v. Patel*, 33 N.Y.3d 1034 (2019).

## III.  Petitioner's Second Conviction

On April 1, 2015, Petitioner was convicted of operating a motor vehicle while under the influence of alcohol, in violation of V.T.L. § 1192(3); aggravated unlicensed operation of a motor vehicle in the second degree, in violation of V.T.L. § 511(2); and operating a motor vehicle without a license, in violation of V.T.L. § 509(1).  (21-CV-992, ECF No. 11-3 ("2013 Indictment Transcripts") at 865-66.)  On April 20, 2015, Petitioner was sentenced to an

---

[1]  All pin citations refer to the page number assigned by the court's CM/ECF system.

indeterminate term of 2 and 1/3 to 7 years of incarceration for operating under the influence in violation of V.T.L. § 1192(3), to run consecutive to the sentence for Petitioner's prior conviction. (*Id.* at 900.)   Petitioner was also sentenced to five years of probation and to pay a $2,000 fine, along with certain court costs. (*Id.*)   With respect to the remaining two counts, Petitioner received concurrent sentences of 180 days and 15 days, respectively.  (*Id.*)

## IV.   Second Direct Appeal

Petitioner challenged his 2015 conviction in the Appellate Division, Second Department.  Petitioner argued that he received ineffective assistance from his trial counsel and that the court erred in failing to suppress evidence of his refusal to take a breathalyzer test.  (State Court Records at 444-86.)   On February 20, 2019, the Appellate Division affirmed the conviction. *People v. Patel*, 169 A.D.3d 935 (2d Dep't 2019).  On May 1, 2019, the Court of Appeals denied leave to appeal.  *People v. Patel*, 33 N.Y.3d 1034 (2019).

## V.   Motion to Vacate

On April 21, 2019, Petitioner filed a pro se motion to vacate his convictions pursuant to New York Criminal Procedure Law § 440.10.  (State Court Records at 76-132.)   Petitioner argued he received ineffective assistance of counsel with respect to his first conviction because his trial counsel, Todd Greenberg, was

allegedly working as an Assistant District Attorney while he represented Petitioner. (*Id.* at 104-10.) Petitioner also argued that he was denied a fair trial during his second trial because prosecutors failed to turn over unredacted versions of police memo books and online booking system sheets. (*Id.* at 111-17.) Petitioner's motions were denied in separate decisions dated September 16, 2019. (*Id.* at 273-79, 759-63.) The Appellate Division denied leave to appeal in each case on February 6, 2020. (*Id.* at 320.)

## VI.  Writ of Coram Nobis

On June 12, 2019, Petitioner filed a pro se motion for a writ of error coram nobis in the Appellate Division, Second Department. With respect to his first conviction, Petitioner argued that his appellate counsel was ineffective for failing to argue that his arraignment and trial counsel were ineffective. (*Id.* at 323-32, 356-58, 386-87.) With respect to his second conviction, Petitioner argued that his appellate counsel was ineffective for failing to argue that the police lacked probable cause to stop him and that the prosecution failed to establish his guilt beyond a reasonable doubt. (*Id.* at 333-43, 387-88.) The Appellate Division denied the motion in separate orders dated January 29, 2020. *People v. Patel*, 179 A.D.3d 1097 (2d Dep't 2020); *People v. Patel*, 179 A.D.3d 1098 (2d Dep't 2020). The Court

of Appeals denied leave to appeal on May 7, 2020. *People v. Patel*, 35 N.Y.3d 994 (2020).

## VII.   Writ of Habeas Corpus

On January 27, 2021, Petitioner filed a petition for a writ of habeas corpus for each conviction pursuant to 28 U.S.C. § 2254. (First Pet.; Second Pet.)  Because the petitions assert 81 nearly identical grounds for relief, the court considers them together.

**STANDARD OF REVIEW**

A petitioner in custody pursuant to a state court judgment may seek a writ of habeas corpus under Section 2254 "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Rule 2(c) of the Rules Governing Section 2254 Cases requires a petition to specify all of the petitioner's available grounds for relief, setting forth the facts supporting each of the specified grounds and stating the relief requested. *See also Mayle v. Felix*, 545 U.S. 644, 655-56 (2005) (explaining that the pleading standard under Rule 2(c) is "more demanding" than the ordinary civil case and requires petitioners to "plead with particularity").  If a claim is "unintelligible," it will be dismissed under Rule 2(c). *Jackson v. Albany Appeal Bureau Unit*, 442 F.3d 51, 54 (2d Cir. 2006); *see also, e.g.*, *Antrobus v. N.Y. State Dep't of Corr. & Comm.*, 2021 WL 1091637, at *2 (E.D.N.Y.

Mar. 22, 2021) ("A petition for federal habeas corpus relief must permit the Court and the respondent to comprehend both the petitioner's grounds for relief and the underlying facts and legal theory supporting each ground so that the issues presented in the petition may be adjudicated.").

In addition, a habeas petition shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Exhaustion "requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)); *see also, e.g.*, *Ramirez v. Att'y Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001). "If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, [the court] 'must deem the claim [] procedurally defaulted.'" *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (second alteration in original) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001)). "An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice'

or by showing that he is 'actually innocent' of the crime for which he was convicted." *Id.* (quoting *Aparicio*, 269 F.3d at 90).

When a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act (AEDPA) "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted).  Under AEDPA, a federal court may grant habeas relief only where the state court's adjudication of the federal claim resulted in a decision that was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision involves "an unreasonable application of" clearly established law when the state court "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *see also, e.g.*, *Harrington v.*

*Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (citation omitted)).

In reviewing the instant petition, this Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted); *see also Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that "courts should review habeas petitions with a lenient eye"). Therefore, the court interprets Petitioner's pleadings as raising the strongest arguments they suggest. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also, e.g.*, *Martin v. United States*, 834 F. Supp. 2d 115, 118 n.1 (E.D.N.Y. 2011) (citing *Williams*, 722 F.2d at 1050).

<u>**DISCUSSION**</u>

**I.   Petitioner's Fourth Amendment Claim**

Petitioner first claims that he was "unreasonably and unlawfully stopped, searched and seized" in violation of the Fourth Amendment.  (First. Pet. at 5; Second Pet. at 5.)  This claim is both procedurally defaulted and not cognizable on federal habeas corpus review.

First, Petitioner failed to raise a Fourth Amendment claim in either of his direct appeals and did not raise the claim in his collateral motion to vacate the conviction under N.Y. C.P.L. § 440.10.  (*See* State Court Records at 1-25, 76-132, 444-86.) Although Petitioner invoked the Fourth Amendment in his coram nobis petition (*see id.* at 333-40), "the writ of error coram nobis lies . . . only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (citation omitted); *see also, e.g.*, *Valerio v. Phillips*, 2008 WL 305007, at *10 (W.D.N.Y. Feb. 1, 2008) ("Courts in this Circuit are in agreement . . . that a writ of error *coram nobis* is not the appropriate procedural vehicle for exhausting any claims other than claims of ineffective assistance of appellate counsel."); *Reyes v. Artus*, 2015 WL 13745784, at *22 n.18 (S.D.N.Y. Mar. 12, 2015) (similar); *Lawson v. McGinnis*, 2013 WL 789173, at *16 (E.D.N.Y. Mar. 1, 2013) (similar).  In addition, "a claim for ineffective assistance of counsel for failing to raise an underlying claim does not exhaust the underlying claim." *Khan v. Capra*, 2020 WL 6581855, at *7 (E.D.N.Y. Nov. 10, 2020) (citation omitted).  Accordingly, Petitioner's Fourth Amendment claim is unexhausted.  Moreover, because Petitioner has already filed direct appeals and a motion to vacate both convictions, he could not return to state court to exhaust a Fourth Amendment claim,

9

resulting in a procedural default. *See Carvajal*, 633 F.3d at 104. Petitioner fails to demonstrate cause and prejudice for his procedural default or that he is actually innocent. *See id.* As a result, Petitioner's procedural default precludes the court from granting habeas relief.

Second, even if it were not procedurally defaulted, Petitioner's Fourth Amendment claim is not cognizable on habeas review. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (citation omitted). "In this Circuit, 'review of Fourth Amendment claims in habeas petitions [may] be undertaken in only . . . two instances: (a) if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Cutts v. Miller*, 2021 WL 242891, at *6 (S.D.N.Y. Jan. 25, 2021) (first alteration in original) (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).

"New York has provided corrective procedures to redress Fourth Amendment violations." *Id.* (collecting cases).

Specifically, "New York provides criminal defendants an opportunity to litigate Fourth Amendment search and seizure issues before trial through a suppression hearing under N.Y. Crim. Proc. Law 710.30." *Cepeda v. Morton*, 2020 WL 6382052, at *4 (S.D.N.Y. Oct. 30, 2020) (quotations and citation omitted). Here, the state trial court conducted a hearing prior to each of Petitioner's trials. (2012 Indictment Transcripts at 1-39; 2013 Indictment Transcripts at 1-14.) Petitioner makes no argument as to any breakdown in the underlying process and the record does not include anything that would indicate Petitioner was prevented from using the appropriate procedures to litigate his Fourth Amendment claims. Accordingly, Petitioner's Fourth Amendment claims are denied.

## II.  Petitioner's *Brady* Claims

Petitioner also claims that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*See, e.g.*, First Pet. at 10-19; Second Pet. at 10-19.)[2] Petitioner did not raise a *Brady* claim with respect to his first conviction, whether before the trial court, on direct appeal, in his post-conviction motion, or in his coram nobis petition.

---

[2] Petitioner also invokes *People v. Rosario*, which "entitles the defense to examine a witness'[s] prior testimony, whether or not it varies from his testimony on the stand."  9 N.Y.2d 286, 289 (N.Y. 1961).  However, alleged "*Rosario* violations are not cognizable in *habeas corpus* proceedings because they are purely errors of state law."  *Ward v. Lee*, 2020 WL 6784195, at *12 (E.D.N.Y. Nov. 18, 2020) (collecting cases).  If Petitioner "had brought a claim under the equivalent federal statute to *Rosario*" – the Jencks Act – "it would not be cognizable either."  *Id.* (collecting cases).

Accordingly, any such claim is unexhausted and procedurally barred. Even if Petitioner had exhausted a *Brady* claim with respect to his first conviction, the petition fails to provide any factual basis for an alleged *Brady* violation and thus fails to comply with Rule 2(c).

Similarly, the petition challenging Petitioner's second conviction does not provide any factual basis for an alleged *Brady* violation. The court notes that in his motion to vacate, Petitioner did argue that prosecutors violated their state law obligations under *Rosario* by failing to disclose arrest paperwork including online booking system worksheets and unredacted versions of police memo books. (State Court Records at 111-17.) Raising a state law *Rosario* claim, however, is insufficient to exhaust a *Brady* claim. *See, e.g.*, *Hill v. Senkowski*, 409 F. Supp. 2d 222, 232 (W.D.N.Y. 2006). Although Petitioner later invoked *Brady* in his application for leave to appeal the denial of his motion to vacate (State Court Records at 773, 780), "[p]resenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it." *Hurdle v. Sheehan*, 2013 WL 6859866, at *7 (E.D.N.Y. Dec. 30, 2013) (quoting *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)). Because the Appellate Division did not consider Petitioner's *Brady* claim in denying leave to appeal (*see* State Court Records at 320), the claim is unexhausted and procedurally barred.

12

In any event, Petitioner's *Brady* claim is meritless.  In his motion to vacate, Petitioner claimed that the documents would have shown that Petitioner was parked on 134th Street rather than Liberty Avenue.  (State Court Records at 111-17.)  To establish a *Brady* violation, however, Petitioner must demonstrate prejudice, *i.e.*, "a reasonable probability that . . . the result of the proceeding would have been different." *Licasusi v. Griffin*, 460 F. Supp. 3d 242, 260 (E.D.N.Y. May 19, 2020) (quoting *Cone v. Bell*, 556 U.S. 449, 470 (2009)).  As the state court found when rejecting his *Rosario* claim, Petitioner "failed to make a sufficient showing that he was actually prejudiced by redactions to the officer's memo book or by the unspecified online booking/work sheets." (State Court Records at 762.)

The evidence cited by Petitioner indicated that Petitioner was parked at the intersection of 134th Street and Liberty Avenue.  (*See, e.g.*, *id.* at 128.)  At trial, a police officer testified that she observed Petitioner's vehicle on Liberty Avenue "right after" 134th Street.  (2013 Indictment Transcripts at 488.)  Although the memo books and online bookings systems sheets conceivably could have been used to impeach the officer on where exactly she saw Petitioner's vehicle – *i.e.*, whether it was on 134th Street at the intersection of Liberty Avenue, or whether it was on Liberty Avenue just past 134th Street – the "minimal" impeachment value of this evidence is insufficient

13

to demonstrate prejudice.   *Chen v. Warden of GreenHaven Corr. Facility*, 2022 WL 657406, at *7 (E.D.N.Y. Mar. 4, 2022).   There was significant evidence of Petitioner's guilt, including evidence that (1) Petitioner was sleeping behind the wheel of a running car; (2) officers noticed a smell of alcohol coming from Petitioner and his vehicle; (3) Petitioner's speech was "very slurred"; and (4) Petitioner fell when he attempted to stand up.   (*See, e.g.*, 2013 Indictment Transcripts at 491-92, 495-96.)   Thus, in addition to being procedurally defaulted, Petitioner's *Brady* claim is denied for lack of prejudice.

## III.   Petitioner's Ineffective Assistance of Counsel Claims

Petitioner argues that he received ineffective assistance of counsel in each of his trials.   With respect to his first trial counsel, Mr. Todd Greenberg, Petitioner claimed ineffective assistance in his motion to vacate.   (State Court Records at 104-10).   The trial court rejected this claim on the merits, finding that Mr. Greenberg's representation of Petitioner was effective.   (*Id.* at 278.)   With respect to his second trial counsel, Mr. Freddy Berg, Petitioner raised a claim of ineffective assistance in his direct appeal.   (*Id.* at 599-611.)   The Appellate Division rejected this claim on the merits, concluding that Mr. Berg's representation was effective.   (*Id.* at 677.)

Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v.*

14

*Washington*, 466 U.S. 668 (1984).  First, Petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688.  In assessing counsel's performance, a reviewing court must operate on the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009).  Second, Petitioner must demonstrate prejudice, *i.e.*, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  Merely showing that the errors had some effect on the outcome of the proceeding is insufficient. *Id.* at 693.  Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Both the *Strickland* standard and the AEDPA are highly deferential, and "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  Although the state courts referred only to New York's "meaningful representation" standard in rejecting Petitioner's claims, courts in this circuit have concluded that such a decision "constitutes an adjudication on the merits of petitioner's federal ineffective assistance of counsel claim." *Martin v. Lamanna*, 2021 WL 663976, at *4 (E.D.N.Y. Feb.

15

18, 2021) (collecting cases).  Accordingly, the court applies AEDPA deference and considers "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

A. Petitioner's First Trial Counsel

In his motion to vacate, Petitioner alleged that Mr. Greenberg was working as an Assistant District Attorney while representing Petitioner and therefore had a conflict of interest that violated Petitioner's Sixth Amendment right to effective counsel.  (State Court Records at 104-10.)  In support of this allegation, Petitioner claimed that Mr. Greenberg served as President of the Queens County District Attorney's Association and attached letters relating to Petitioner's supervised release that identified Mr. Greenberg as an "Assistant District Attorney."  (*Id.* at 79, 84-93.)

The state court properly rejected Petitioner's claim of a conflict of interest as meritless.  (*Id.* at 278.)  The state produced overwhelming evidence showing that Mr. Greenberg had not been employed as an Assistant District Attorney since 1980 – several decades before Petitioner's trial.  This evidence included payroll and personnel records from the Queens County District Attorney's Office; Mr. Greenberg's professional website, which stated that he served as an Assistant District Attorney before entering private practice in 1980; contemporaneous statements made

16

by Mr. Greenberg, confirming the details of his professional background; and the certificate of incorporation for the Queens County District Attorney's Association, which stated that the purpose of the organization was to foster "personal acquaintances among *former* and present" prosecutors. (*Id.* at 159-60 (emphasis added).)  In light of this evidence, it was more than reasonable for the state court to conclude that Mr. Greenberg did not have a conflict of interest that compromised Petitioner's right to effective assistance of counsel.

Petitioner's motion to vacate also argued that Mr. Greenberg rendered ineffective assistance by (1) failing to conduct a pre-trial investigation into a police officer's use of a personal breathalyzer device; and (2) failing to move to set aside the verdict based on a lack of probable cause and the admission of testimony about the personal breathalyzer device. (*Id.* at 110.)  As an initial matter, Mr. Greenberg did litigate the probable cause for the stop and the admission of the breathalyzer at pre-trial hearings and in a pre-trial motion. (2013 Indictment Transcripts at 1-14; State Court Records at 1003-07.)  Trial counsel has not been found deficient for not renewing a motion that has already failed. *Dunham v. Travis*, 313 F.3d 724, 731 (2d Cir. 2002); *see also, e.g.*, *Jabaut v. Miller*, 2020 WL 2519790, at *14 (N.D.N.Y. May 18, 2020) ("[D]ecisions such as when to object and on what grounds are primarily matters of trial

strategy and tactics, and thus are virtually unchallengeable [through an ineffective assistance claim] absent exceptional grounds for doing so." (second alteration in original) (quoting *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005))). In addition, as the trial court recognized (State Court Records at 278), Mr. Greenberg was successful in acquitting Petitioner of the top count of aggravated driving while intoxicated, indicating that counsel's performance was reasonable and effective. *See Morency v. Annucci*, 2017 WL 4417718, at *15 (E.D.N.Y. Mar. 20, 2017) (trial counsel's strategy was proven effective in an acquittal of the charge). Thus, Petitioner has failed to show that the state court unreasonably applied *Strickland* when it concluded that Mr. Greenberg's performance was not deficient.

Moreover, even if Petitioner could establish deficient performance, he cannot demonstrate prejudice. In addition to the results from the officer's personal breathalyzer device, the evidence against Petitioner included testimony from police officers that: (1) Petitioner was swerving in and out of lanes without signaling; (2) Petitioner stopped in the right lane of traffic rather than on the shoulder of the road; (3) there was a smell of alcohol emanating from Petitioner and his vehicle; (4) Petitioner's eyes were bloodshot and watery; and (5) Petitioner struggled to stay on his feet and had to lean against the car to maintain his balance. (*See, e.g.*, 2012 Indictment Transcripts at

18

265-66, 271-73.)   The jury also observed a video of Petitioner performing coordination tests "[p]oorly." (*Id.* at 367.) Moreover, the trial court instructed the jury that it was permitted "to infer from the fact that [the officer] did not record the actual breath test results that [the] information if it had been recorded would not have been favorable to the prosecution." (*Id.* at 426.)   The jury apparently discredited the results of the breathalyzer by acquitting Petitioner of aggravated driving while intoxicated.  In light of the ample evidence of Petitioner's guilt, as well as the trial court's adverse inference instruction, Petitioner has failed to show a reasonable probability of a different outcome if Mr. Greenberg had renewed his objection to probable cause or his efforts to exclude evidence of the personal breathalyzer device.

          B. Petitioner's Second Trial

          In his counseled direct appeal to the Second Department, Petitioner raised several arguments regarding the conduct of his second trial counsel, Mr. Freddy Berg. (State Court Records at 574-611.)   As mentioned above, the Appellate Division rejected these claims on the merits and concluded that Mr. Berg provided meaningful representation.   Applying AEDPA deference to the Appellate Division's decision, the court concludes that there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

First, Petitioner's counsel criticized Mr. Berg's knowledge of the applicable law. (State Court Records at 601-03.) During his summation, for example, Mr. Berg repeatedly argued: "how can someone be sleeping and at the same time operate a motor vehicle?" (2013 Indictment Transcripts at 790.) The legal definition of operating a motor vehicle is broader than driving, however, and includes when the defendant is "merely behind the wheel with the engine running." *People v. Kaster*, 2020 WL 6165157, at *2 (N.Y. Sup. Ct. App. Term Oct. 8, 2020). Similarly, Mr. Berg argued that there was no scientific evidence that his client was intoxicated (*see, e.g.*, 2013 Indictment Transcripts at 803), despite the fact that the charge of common law intoxication requires no such proof. *See, e.g.*, *People v. McConnell*, 812 N.Y.S.2d 742, 744 (N.Y. Sup. Ct. App. Term 2006).

Nevertheless, even assuming that Mr. Berg's conduct fell below an objective standard of reasonableness, Petitioner has failed to demonstrate prejudice. As discussed above, the prosecution presented ample evidence that Petitioner was intoxicated, including testimony from two police officers regarding Petitioner's erratic driving, slurred speech, difficulty maintaining his balance, and refusal to take a breathalyzer test. Moreover, the jury was properly instructed on the law, including the requirements for operating a motor vehicle and common law intoxication. (2013 Indictment Transcripts at 847-48.)

20

Accordingly, Petitioner has failed to show that, but for Mr. Berg's alleged errors, the result of the trial would have been different.

Second, Petitioner's appellate counsel argued that Mr. Berg was ineffective during *voir dire*. (State Court Records at 599.) During the first round of *voir dire*, Mr. Berg did not ask potential jurors any questions during his twenty-minute round of *voir dire*. He briefly exposited to the potential jurors and then ended his turn. (2013 Indictment Transcripts at 307-08.) However, Mr. Berg explained to the court that his lack of questioning was part of his trial strategy. Additionally, Petitioner does not identify any juror to whom Mr. Berg should have objected. Without a specific argument as to how Mr. Berg's *voir dire* strategy was objectively unreasonable, Petitioner is unable to rebut the presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Third, Petitioner's appellate counsel argued that Mr. Berg elicited testimony from witnesses that was damaging to Petitioner. (State Court Records at 603-07.) During his cross-examination of one police officer, Mr. Berg elicited that Petitioner was shouting expletives, that he was incoherent and mumbling, and that he was screaming for an hour and a half. (2013 Indictment Transcripts at 555-56.) Mr. Berg also elicited testimony that another police officer felt threatened by Petitioner's behavior. (*Id.* at 600.) As an initial matter,

decisions about "whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature," and therefore generally do not support an ineffective assistance claim. *Walters v. United States*, 2022 WL 890906, at *3 (S.D.N.Y. Mar. 24, 2022) (alteration in original) (quoting *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992)).  Even assuming that Mr. Berg's cross-examination constituted deficient representation, however, Petitioner has failed to show prejudice.  In addition to the substantial evidence of Petitioner's guilt, discussed above, the substance of Petitioner's conduct during the car ride had already been brought out on direct examination.  (*See, e.g.*, 2013 Indictment Transcripts at 515.)

Fourth, Petitioner's appellate counsel challenged Mr. Berg's decision not to stipulate that Petitioner's license was suspended.  (State Court Records at 603-07.)  This refusal caused the prosecution to call an Assistant District Attorney, who identified herself as a "government employee," to testify that a judge had informed Petitioner that his license was suspended. (2013 Indictment Transcripts at 752-53.)  Mr. Berg's conduct arguably may have fallen below an objective standard of reasonableness, in risking that the door could be opened to Petitioner's prior convictions for driving while under the influence by allowing this testimony.  Further, the stipulation would have proved the notice requirement only for the lesser charge

22

of Aggravated Unlicensed Operation of a Motor Vehicle under V.T.L. § 511(2)(A), which is a misdemeanor charge. *See Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.")  The court, however, severely limited the Assistant District Attorney's testimony and thus the jury was only told that Petitioner was informed by a judge that his license was suspended. (*See, e.g.*, 2013 Indictment Transcripts at 753-74.)  There was no testimony about Petitioner's prior DWI convictions, and the jury was not aware of the witness's position as an Assistant District Attorney.  Thus, this claim also fails on the prejudice prong as Petitioner has failed to demonstrate that but for this testimony the outcome would have been different.

Finally, Petitioner argued on direct appeal that Mr. Berg was consistently late and made odd comments throughout the trial.  The state acknowledges (ECF No. 10-1 at 31) – and the court's review of the record confirms – that Mr. Berg at times conducted himself in a bizarre fashion.  As the state points out, however, much of these oddities occurred outside the presence of the jury.  As "regrettable" as Mr. Berg's conduct may have been, Petitioner has failed "to meet the prejudice standard elucidated in *Strickland* as the attorney's conduct occurred outside the

23

presence of the jury." *Tlatepla v. Graham*, 2019 WL 4605337, at *12 (S.D.N.Y. Aug. 5, 2019) (quotations and citation omitted).

In sum, even assuming that some of Mr. Berg's conduct fell below an objective standard of reasonableness, Petitioner has failed to demonstrate prejudice. At a minimum, the Appellate Division did not unreasonably apply *Strickland* when it concluded that Petitioner failed to carry his burden of demonstrating ineffective assistance of counsel. Accordingly, Petitioner's Sixth Amendment claims are denied.

## IV.  Petitioner's Grand Jury Claims

Petitioner claims that his Fifth Amendment right to indictment by a grand jury was violated in both state cases. (*See, e.g.*, First Pet. at 7; Second Pet. at 7.) These claims are procedurally defaulted and not cognizable on habeas review.

First, Petitioner's grand jury claims are unexhausted and therefore procedurally barred. Petitioner claimed that the 2012 indictment was defective in his reply brief for his motion to vacate. (State Court Records at 193-94.) "Under New York law, however, a claim of error first raised in a reply brief is not properly presented to the reviewing court," and therefore is unexhausted and procedurally barred. *Lurie*, 228 F.3d at 124. Similarly, in his coram nobis petition, Petitioner claimed that appellate counsel was ineffective for failing to raise a grand jury claim with respect to the 2013 indictment. (State Court

Records at 384.)   As discussed above, however, "a claim for ineffective assistance of counsel for failing to raise an underlying claim does not exhaust the underlying claim." *Khan*, 2020 WL 6581855, at *7 (citation omitted).   Because Petitioner could not return to state court to exhaust a grand jury claim, and because Petitioner fails to show cause and prejudice or actual innocence, any grand jury claim is procedurally barred.

Second, "claims of deficiencies in state grand jury proceedings are not cognizable in a *habeas corpus* proceeding." *Rucano v. LaManna*, 2021 WL 4521900, at *6 (E.D.N.Y. Oct. 4, 2021). There is no federal constitutional right to indictment by a grand jury in a state criminal prosecution as the right has not been incorporated by the Due Process Clause of the Fourteenth Amendment. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Davis v. Mantel*, 42 F. App'x 488, 490 (2d Cir. 2002).   Additionally, any claimed errors in the grand jury process are harmless as they were cured by Petitioner's conviction by the petit jury.   *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) ("[I]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are *a fortiori* foreclosed in a collateral attack brought in a federal court."); *see also, e.g.*, *McKelvey v. Bradt*, 2016 WL 3681457, at *11-12 (S.D.N.Y. Jul. 6, 2016).   Consequently, Petitioner's grand jury claims are denied.

**V.  Petitioner's Eighth Amendment Claims**

Petitioner claims that his Eighth Amendment rights were violated because the state court (1) set excessive bail, (2) imposed an excessive fine, and (3) imposed custodial sentences that amounted to cruel and unusual punishment. (*See, e.g.*, First Pet. at 20, 22, 24; Second Pet. at 20, 22, 24.)

First, Petitioner's claim of excessive bail is moot because Petitioner was convicted and is now serving his sentence. "[T]he Eighth Amendment protection against excessive bail may only be vindicated prior to trial." *MacLean v. Lewin*, 2011 WL 2971771, at *4 (W.D.N.Y. July 20, 2011) (citing *Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982)). Once a petitioner is convicted, claims of excessive bail are no longer at issue. *See, e.g.*, *Lombard v. Mazzuca*, 2003 WL 22900918, at *6 (E.D.N.Y Dec. 8, 2003) (habeas claim that pretrial bail was excessive became moot once petitioner was convicted). Accordingly, Petitioner's claim of excessive bail is denied as moot.

Second, "[i]t is well settled that '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.'" *Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (second and third alterations in original) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)); *see also, e.g.*, *Dotsenko v. Joseph*, 2019 WL 4917952, at *5 (E.D.N.Y. Oct. 4, 2019). By the time of his convictions giving rise to the

instant petitions, Petitioner had already been convicted under
V.T.L. § 1192 twice in the preceding ten years, in 2007 and 2009.
(State Court Records at 215, 217.)  Due to these prior convictions,
Petitioner's instant convictions were classified as Class D
felonies.  V.T.L. § 1193(1)(c)(ii).  As a result, Petitioner was
subject to a fine up to $10,000 and imprisonment of up to 7 years.
*See id.; see also* N.Y. Penal Law § 70.00.  With respect to the
2012 indictment, Petitioner was sentenced to two to six years in
prison.  (2012 Indictment Transcripts at 476.)  With respect to
the 2013 indictment, Petitioner was sentenced to two and one third
to seven years in prison and to pay a $2,000 fine.  (2013 Indictment
Transcripts at 900.)  Because these sentences were within the range
prescribed by New York law, Petitioner's Eighth Amendment claims
are denied.

**VI.   Petitioner's Speedy Trial Claims**

        Petitioner asserts violations of his Sixth Amendment
right to a speedy trial.  (First Pet. at 14; Second Pet. at 14.)
These claims are also unexhausted and procedurally barred.
Petitioner did not raise a Sixth Amendment speedy trial claim on
direct appeal, in his motion to vacate, or in his coram nobis
petition.  With respect to the 2013 indictment, Petitioner's trial
counsel did raise a speedy trial claim under C.P.L. § 30.30.
"Raising a claim pursuant to § 30.30," however, "is not sufficient
to exhaust the separate constitutional claim." *Turner v. Bell*,

27

2021 WL 1565373, at *2 (E.D.N.Y. Apr. 21, 2021); *see also, e.g.,* *Gibriano v. Attorney General*, 965 F. Supp. 489, 492 (S.D.N.Y. 1997) (same).  The record does not reveal any basis to excuse the procedural default resulting from Petitioner's failure to exhaust a speedy trial claim.  Accordingly, the court rejects Petitioner's Sixth Amendment speedy trial claims as procedurally defaulted.

## VII.  Petitioner's Statutory and Regulatory Claims

Finally, Petitioner invokes a host of federal statutes and regulations in his petitions.  (First Pet. at 32-164; Second Pet. at 32-164.)  The court concludes that Petitioner is not entitled to habeas relief based on any of the statutes or regulations cited in the petitions.

All of the asserted statutory and regulatory violations fail to comply with Rule 2(c) of the Rules Governing Section 2254 proceedings.  Petitioner has enumerated many federal laws but has not sufficiently or specifically explained how each law was violated and how that violation led to Petitioner's incarceration or a violation of Petitioner's rights.  For instance, Petitioner alleges that unidentified "officers" committed various crimes under Title 18 of the United States Code.  For example, Petitioner alleges:

> 18 U.S.C.A § 653 – GROSSLY EGREGIOUS MALFEASANCE IN VIOLATION OF DISBURSING OFFICER MISUSING PUBLIC FUNDS: Officers engaged in insurrection and rebellion through FRAUD & DECEIPT [sic], by committing misprision of felony in violation of

> accessory after the fact, by being a disbursing
> officer of the United States, or any department or
> agency thereof, or a person acting as such, in any
> manner converts to his own use, or loans with or
> without interest, or deposits in any place or in
> any manner, except as authorized by law, any public
> money intrusted to him; or, for any purpose not
> prescribed by law, withdraws from the Treasury or
> any authorized depositary, or transfers, or
> applies, any portion of the public money intrusted
> to him, is guilty of embezzlement of the money so
> loans deposited, withdrawn, transferred or applied.

(First Pet. at 60 (emphasis in original)).  Petitioner has not

provided any facts to identify the officers or the specific actions

they took that allegedly violated this criminal statute, nor does

he indicate how those actions violated Petitioner's rights or led

to his incarceration.  Each of the statutory and regulatory grounds

raised by Petitioner are very similar to the example identified

above (*see, e.g.*, First Pet. at 32-58, 61-164), and thus none of

them meet the pleading standard under Rule 2(c).  *See* Fed. R.

Governing Section 2254 Proceedings, Rule 2(c).

More fundamentally, a habeas petitioner under Section

2254 must show that he is "*in custody in violation* of the

Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a) (emphasis added).  The court agrees with Respondent that

Petitioner "nowhere connects the violations he alleges to his

custody." (ECF No. 10-1 at 41.)  For example, Petitioner invokes:

(1) the federal criminal prohibition on aiding and abetting an

offense against the United States (*e.g.*, First Pet. at 38 (citing

18 U.S.C. § 2)); (2) the federal criminal prohibition on conspiring to commit an offense against the United States (*e.g.*, First Pet. at 44 (citing 18 U.S.C. § 371)); (3) federal criminal statutes regarding the filing of claims against the United States and the embezzlement of funds from the United States (*e.g.*, First Pet. at 46-50, 54 (citing 18 U.S.C. §§ 285-87, 641)); (4) federal criminal statutes prohibiting the forging of a federal court officer's signature and prohibiting various federal officers from embezzling funds (*e.g.*, First Pet. at 52, 56, 58, 60 (citing 18 U.S.C. §§ 505, 645, 648, 653)); (5) federal criminal prohibitions on hostage taking, kidnapping, and receiving ransom payments (*e.g.*, First Pet. at 70, 72, 74 (citing 18 U.S.C. § 1201-03));(6) federal criminal statutes prohibiting making false statements within the jurisdiction of the United States and obstructing official proceedings of United States departments and agencies (*e.g.*, First Pet. at 64, 76 (citing 18 U.S.C. §§ 1001, 1505)); and (7) a federal statute creating monetary grants to states for the improvement of criminal records (*e.g.*, First Pet. at 134 (citing 34 U.S.C. § 40302)).  As these few examples illustrate, the statutes and regulations cited in the petitions have no relationship to Petitioner's custody pursuant to his state court judgments of conviction.

Finally, "[h]abeas corpus is available to review a claim of violations of federal laws only when the claim alleges 'a

fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Joyce v. Pataki*, 100 F.3d 941 (table), 1996 WL 2067, at *2 (2d Cir. Jan. 3, 1996) (alteration in original) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1979)); *accord Reed v. Farley*, 519 U.S. 339, 348 (1994). Petitioner provides no facts or argument to show that the alleged statutory and regulatory violations were related to his custody, let alone that those alleged violations resulted in a complete miscarriage of justice at his trial. Accordingly, Petitioner is not entitled to habeas relief based on the statutory and regulatory violations that are conclusorily alleged in his petitions.

### CONCLUSION

For the foregoing reasons, the two petitions for a writ of habeas corpus in 21-CV-992 and 21-CV-993 are denied. No certificate of appealability shall issue because Petitioner has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962).

31

The Clerk of Court is respectfully requested to enter judgments in favor of Respondent on both petitions, serve a copy of this memorandum and order and the judgments in each action on Petitioner, note service on the docket, and close this case.

SO ORDERED.

Dated:    Brooklyn, New York
          May 6, 2022              /s/ Kiyo A. Matsumoto
                                   KIYO A. MATSUMOTO
                                   United States District Judge
                                   Eastern District of New York